**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
PANAGIOTIS ARMATAS, as an individual
and Parent and natural guardian for his Minor
Children ALEXANDER ARMATAS and
EVANGELOS ARMATAS,

                Plaintiff,

     - against -

ELENA MAROULLETI, et al.
              Defendants.
-----------------------------------------------------------X

**REPORT & RECOMMENDATION**

08-CV-310 (SJF) (RER)

**RAMON E. REYES, JR., U.S.M.J.:**

Plaintiff, Panagiotis Armatas ("Plaintiff" or "Armatas"), brings this action on his own

behalf and on behalf of his children, Alexander and Evangelos Armatas ("Minor Plaintiffs"),

against Elena Maroulleti ("Maroulleti") and the City of New York ("City"), New York City

Police Department ("NYPD"), Eric Christophersen ("Christophersen"), Robert Edwin ("Edwin"),

Steven Borchers ("Borchers"), Alvin Gomez ("Gomez"), John Goetz ("Goetz"), and Carey

Alpert ("Alpert") (collectively, "City Defendants"), alleging that Defendants violated 42 U.S.C. §

1983 ("Section 1983") and asserting various state law torts.

Maroulleti moved for summary judgment on June 14, 2010. (Docket No. 95.) The

motion was fully briefed and presented to the Court on July 29, 2010. (Docket Nos. 95-99.) City

Defendants also moved for summary judgment on June 14, 2010. (Docket No. 100.) Their

motion was fully briefed and presented to the Court on August 6, 2010. (Docket Nos. 100-110.)

On September 17, 2010, the Honorable Sandra J. Feuerstein referred both motions to me for a

report and recommendation. (Docket Entry, 9/17/2010.) The trial was initially scheduled to

begin October 12, 2010, but has since been rescheduled to start October 25, 2010. (Docket No. 120.)

For the reasons stated herein, I respectfully recommend that the City Defendants' motion for summary judgment be granted in its entirety and Maroulleti's motion for summary judgment be granted in part and denied in part.

## BACKGROUND

### I. Facts

Maroulleti founded a cultural nonprofit, Aktina Productions, which was set up "to promote and preserve the Greek and Cypriot culture through radio, TV and folk art programs." (Declaration of Qiana Smith-Williams in Support of City Defendants' Motion for Summary Judgment ("Smith-Williams Decl."), dated June 14, 2010, Exh. J at 19-20.) As part of the nonprofit, Maroulleti hosted a radio program every week. (*Id.* at 35.)

There came a time when Armatas sought out Maroulleti to have her investigate allegations that New York City hospitals were circumcising immigrants' children without obtaining proper consent. (*Id.* at 35-38.) Maroulleti suggested he contact his local elected official, explaining that she could not go on the air with his unfounded allegations. (*Id.*) On July 24, 2006, Armatas again contacted Maroulleti,[1] but this time called her cell phone to inform her that a former guest of her show, Steve Tsivicos, used "foul and threatening language" against

_____

[1] Armatas admits to contacting Maroulleti, but maintains that he contacted her only in her capacity as chief reporter of a popular program in the Greek community. (Opposition to City Defendants' Statement of Material Facts ("Opp. To City Facts"), dated July 19, 2010, ¶ 3.) It is immaterial whether he contacted Maroulleti as a private individual or as a radio personality; it is important that he called her directly. He does not deny this fact. *See id.*

him.  (Smith-Williams Decl., Exh. I at 36.)  Maroulleti maintains that during the course of their

telephone conversation, Armatas said he was "going to do things to [her] and [her] family that

you don't even want to think about."  (Smith-Williams Decl., Exh. J at 60; *see also* Affidavit of

Elena Maroulleti ("Maroulleti Aff."), dated June 4, 2010, ¶ 16.)  Armatas, however, denies

making any threats, veiled or otherwise, to Maroulleti or her family during that call.  (Affidavit of

Plaintiff, Panagiotis Armatas, in Opposition to Summary Judgment Motion of Defendant

Maroulleti ("Armatas Aff. in Opp. to Maroulleti"), dated July 19, 2010, ¶ 16; Declaration of

Robert G. Leino in Opposition to Summary Judgment Motion ("Leino Decl."),[2] dated July 19,

2010, Exh. 1 at 52-53.)  After the conversation with Maroulleti, Armatas called Aktina

Productions and left messages at least four times.  (Smith-Williams Decl., Exh. I at 55, Smith-

Williams Decl., Exh. J at 61.)  Armatas maintains that he was calling to remind the station about

the circumcision issue in case they wanted to investigate and that he did not at any time threaten

Maroulleti or her family.  (Smith-Williams Decl., Exh. I at 55; Leino Decl., Exh. 1 at 52-53.)

Armatas denies ever calling Maroulleti's cell phone again.  (Leino Decl, Exh. 1 at 64.)

However, in her deposition, Maroulleti claimed that Armatas called her cell phone again the next

day, despite her having asked him to stop.  (Smith-Williams, Exh. J at 60-61.)  She claimed that

she hung up, but he called again and repeated the same threat.  (*Id.* at 61.)  In her affidavit

submitted with the motion for summary judgment, Maroulleti avers that all the calls and threats

were made on July 24, 2010—once on her cell phone, and a handful of times at the Aktina

---

[2] Although Leino submitted a declaration in response to both motions for summary judgment, the
exhibits submitted are identical except that the declaration in opposition to the City contains two
additional exhibits.  Therefore, references to the Leino Declaration incorporate both declarations'
exhibits.

number.  (Maroulleti Aff. ¶ 16.)

On July 25, 2006, Maroulleti filed a complaint with NYPD.[3]  (Smith-Williams Decl. Exh. C; Maroulleti Aff. ¶ 17.)  In the NYPD complaint, Maroulleti alleged that Armatas called her "cell phone several times stating 'I will do things to you and your family you don't even know'" "causing annoyance and alarm."  (Smith-Williams, Exh. C.)

Christophersen, an NYPD detective, claims to have called Maroulleti on July 26, 2006 to confirm the allegations in the report, which she allegedly did.  (Smith-Williams, Exh. K at 19, 30.)  Maroulleti, however, does not recall speaking to anyone from NYPD after making her report until she was informed of Armatas's arrest.  (Leino Decl., Exh. 4 at 95.)  Edwin, a member of Christophersen's team, did not know whether Christophersen made any calls to Maroulleti, but Christophersen did file a complaint follow-up report on July 26 regarding the call to Maroulleti.  (Leino Decl., Exh. 12.)

On July 31, 2006, Christophersen and Edwin went to Armatas's house to speak with him about Maroulleti's allegations.  (*Id.* at 27, 29-30.)  Armatas's children, Alexander (8 years old) and Evangelos (6 years old), were at home with him at the time.  (Smith-Williams Decl., Exh. I at 71.)  Christophersen claims that he showed Armatas the police report and informed Armatas that he was being arrested on the basis of that report.  (Smith-Williams Decl., Exh. I at 67-68.)  Christophersen did not make the decision to arrest at the direction of any supervisor or at the

---

[3] Armatas asserts that there is an issue of material fact as to whether Maroulleti filed the complaint in person or via 911 call, (*see* Opposition to Maroulleti's Statement of Facts, dated July 19, 2010, ¶ 17); however, he does not contend, generally, that a complaint was made or that the complaint that was produced is in fact Maroulleti's.  How the complaint was made is irrelevant to the issue whether Maroulleti gave police false information and to the issue of probable cause for arrest.

specific request of Maroulleti or anyone else, rather the decision whether to make the arrest or not was completely within his discretion. (*See* Smith-Williams Decl., Exh. K at 27; Smith-Williams Decl., Exh. M at 17; Leino Decl., Exh. 11 at 26-27.) Christophersen maintains that upon hearing the allegations against him, Armatas did not deny them, but did state that Maroulleti was "crazy." (Smith-Williams Decl., Exh. K at 29-30.) Armatas, on the other hand, claims that he was never asked whether the allegations were true and that he was only informed that he needed to go to the station to sign for an order of protection. (Leino Decl., Exh. 1 at 69-71.)

Christophersen and Edwin gave Armatas time to call a family member to watch his children, but Armatas could not reach anyone, and so, the boys were brought along to the station. (Smith-Williams Decl., Exh. I at 73.) Armatas was not handcuffed, nor was he taken to the station in a marked police car. (Smith-Williams Decl., Exh. I at 75; Smith-Williams Decl., Exh. K at 64.) Upon reaching the police station, the boys were taken to an interview room where they watched television. (Smith-Williams Decl., Exh. K at 62; Smith-Williams Decl., Exh. I at 75-76, 81.) Armatas stayed with his boys except when he was taken to be fingerprinted. (Smith-Williams Decl., Exh. K at 62-63.) The only time he was handcuffed was when he was escorted through the precinct to be fingerprinted. (*Id.* at 34.) Armatas was not physically injured as a result of the handcuffing. (Smith-Williams Decl., Exh. I at 75, 78, 109.) The police issued Armatas a Desk Appearance Ticket and released him. (Smith-Williams Decl., Exh. K at 64.)

On August 1, 2006, Christophersen contacted the Queens County District Attorney's Office ("D.A.'s Office") to inform them of Maroulleti's report and thereafter, signed a criminal court complaint prepared by the D.A.'s Office charging Armatas with Aggravated Harrassment

and Harrassment.  (Smith-Williams Decl., Exh. F.)  Christophersen had no further involvement with Armatas's prosecution.  (Smith-Williams Decl., Exh. K at 46, 75-76.)

After arraignment, the D.A.'s Office obtained a Supporting Deposition from Maroulleti, which was necessary to continue the prosecution against Armatas.  (*See* Leino Decl., Exh. 9.) The Supporting Deposition supported the allegations set forth in Maroulleti's NYPD report.  (*See* Leino Decl., Exh. 9 and Smith-Williams Decl., Exh. F.)  Alpert, the assigned Assistant District Attorney, engaged in discussions with supervisors regarding possible plea offers, contacted Maroulleti to discuss her allegations, engaged in motion practice, and prepared for court appearances.  (Smith-Williams Decl., Exh. N at 19, 30-31, 55-57, 62-63, 96-97, 108-109, 121-122.)  In August 2007, the charges against Armatas were dropped pursuant to N.Y.C.P.L. § 30.30,[4] since Maroulleti would no longer cooperate.[5]  (Smith-Williams Decl., Exh. H; Smith-Williams Decl., Exh. J at 108.)

Armatas filed the instant complaint on January 22, 2008 alleging that the City, NYPD, and Maroulleti violated his constitutional rights and were liable for false arrest, malicious prosecution, and intentional infliction of emotional distress.  He also alleged that Maroulleti filed a false police report against him.  Armatas filed an amended complaint on July 29, 2009, naming

---

[4] N.Y.C.P.L. § 30.30 prescribes speedy trial limitations, designating the time periods for felony, misdemeanor, and violation charges within which the prosecution must be ready for trial or dismiss the case.

[5] Armatas contests this point, claiming that it is a self-serving and legal conclusion.  (Opp. to City Facts ¶ 37.)  However, Armatas's claim is belied by the record.  When the charges were dismissed, ADA Robin Kwalbrun stated on the record that it was because the complainant would no longer cooperate.  (Smith-Williams Decl., Exh. H.)  This is corroborated by the deposition testimony of Maroulleti where she indicated that she did not want to pursue the case further. (Smith-Williams Decl., Exh. J at 108.)

the individual NYPD officers and Alpert and asserting that some and/or all were liable for violating his civil rights, and for false arrest, battery, negligence, intentional infliction of emotional distress, and malicious prosecution. Additionally, he added claims in his capacity as a parent against some of the individual defendants and the City for violating his children's civil rights, and for filing a false police report, false arrest, negligence, and intentional infliction of emotional distress.

## II.  **The Instant Motions**

### A.  *City Defendants' Motion*

City Defendants move for summary judgment on various grounds. City Defendants argue that probable cause for Armatas's arrest existed, precluding his false arrest claims. (City Defendants' Memorandum of Law in Support of their Motion for Summary Judgment ("City Def. Mem."), dated June 14, 2010, at 4-7.) They further argue that the false arrest claims against Borchers, Gomez, and Goetz should be dismissed because they were not personally involved in his arrest. (*Id.* at 8-10.) They also contend that Armatas cannot prove any of the necessary elements of his malicious prosecution claims. (*Id.* at 11-16.) Moreover, City Defendants assert that the individual defendants are entitled to qualified immunity, and that Alpert is entitled to absolute prosecutorial immunity. (*Id.* at 16-22.) City Defendants also contend that the Plaintiff cannot establish a claim for municipal liability and that NYPD is not a suable entity, and therefore, summary judgment should be granted to the City and NYPD. (*Id.* at 23-26.)

City Defendants further contend that all of Plaintiff's state law claims should be dismissed either as a matter of public policy or because Plaintiff cannot establish the elements of

the claims.  (*Id.* at 27-30.)  In the alternative, City Defendants argue that if the Court dismisses

the Section 1983 claims, the Court should decline to exercise jurisdiction over the state law

claims.  (*Id.* at 31.)

Finally, City Defendants assert that the false arrest claims brought on behalf of Minor

Plaintiffs' fail because the children were not arrested.  (*Id.* at 10-11.)  With respect to the

remainder of the Minor Plaintiffs' claims, City Defendants argue that they are entitled to

judgment because the children did not file a notice of claim with the City.  (*Id.* at 26-27.)

Regarding his false arrest claims against the individual NYPD defendants, Armatas

asserts that there is no probable cause for an arrest when the arrestee denies the charges,

necessitating further investigation, but concedes that there is no false arrest claim against Goetz

and Gomez.  (Plaintiff's, Panagiotis Armatas', Memorandum of Law in Opposition to the City

Defendants' Motion for Summary Judgment ("Pl. Mem. in Opp. to City."), dated July 19, 2010,

at 6-8.)  However, he continues to assert that Borchers is liable by his "acquiescence" in the

arrest.  (*Id.* at 5-6.)  As to the malicious prosecution claim, Armatas argues that the dismissal of

the case was a favorable outcome for him.  (*Id.* at 8-9.)  He does not address the remaining

elements of malicious prosecution.  Armatas contends that Alpert is not entitled to prosecutorial

immunity because she was acting as an "investigator the whole time trying to build up a case."

(*Id.* at 8.)  He does not address the issue of qualified immunity.  With regard to his Section 1983

claim against the City, Armatas claims that the NYPD "has a pattern of falsification," which

Armatas claims without much explanation creates a material fact in dispute.  *Id.* at 5.)  He does

concede, however, that the claim against NYPD as an entity should be dismissed.  (*Id.*)  Armatas

does not address the motion with respect to the Minor Plaintiffs' claims.

### B. *Maroulleti's Motion*

Maroulleti also moved for summary judgment on a number of grounds. First, Maroulleti argues that Armatas did not plead, nor can he prove, that she acted under color of state law necessitating the dismissal of all Section 1983 claims against her. (Memorandum of Law in Support of Defendant Maroulleti's Motion for Summary Judgment ("Maroulleti Mem."), dated June 14, 2010, at 4-6.) Second, she asserts that probable cause for the arrest of Armatas necessitates granting summary judgment in her favor on the false arrest and malicious prosecution claims since probable cause negates elements of each. (*Id.* at 6-12.) Third, she contends that Armatas did not sufficiently plead, nor can he raise an issue of triable fact regarding, intentional infliction of emotional distress. (*Id.* at 12-15.) Finally, she argues that the Minor Plaintiffs lack standing to sue upon the allegation of falsification to the authorities and so their claims must be dismissed. (*Id.* at 16-17.)

In response, Armatas claims several material issues of fact exist as to his false arrest and malicious prosecution claims that preclude summary judgment—namely whether Armatas made one or several calls to Maroulleti's cell phone, whether during the course of any of his admitted phone calls he threatened Maroulleti, whether probable cause existed, and whether a politician's power was used to cause the arrest. (Plaintiff's Memorandum of Law in Opposition to Defendant Maroulleti's Motion for Summary Judgment ("Pl. Mem. in Opp. to Maroulleti"), dated July19, 2010, at 6-7.) However, Armatas concedes that the Section 1983 claims must be dismissed since Maroulleti is a private citizen, who was not acting under the color of state law. (*Id.* at 8.) As to intentional infliction of emotional distress, Armatas argues that the arrest of an innocent man is conduct extreme and outrageous for purposes of establishing the claim. (*Id.*)

Armatas further contends that he has properly plead a New York falsification claim against Maroulleti given her accusations in the police report that he maintains are false. (*Id.* at 8-9.) Finally, he asserts that his children may maintain a derivative claim because Maroulleti knew he had children, and so it was foreseeable that they would be affected by her making a criminal complaint. (*Id.* at 9-10.)

## DISCUSSION

### I. Summary Judgment Standards

To grant a motion for summary judgment, the court must find that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c)(2). A genuine issue of material fact is an issue of fact which "could reasonably be resolved in favor of either party," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986), and which must be determined in order to apply the relevant substantive law, *id.* at 248. The moving party has the burden of establishing "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 447 U.S. 317, 323 (1986). Once the moving party demonstrates that no issue of material fact exists, the non-moving party bears the burden to present facts showing there is a genuine issue of material fact. *Anderson*, 477 U.S. at 250.

All facts and inferences should be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the non-movant cannot defeat summary judgment based on "mere allegations or denials," FED. R. CIV. P. 56(e), or "mere speculation or conjecture as to the true nature of the facts," *Martal Cosmetics, Ltd. v. International Beauty Exchange Inc.*, No. 01-CV-7595, 2007 WL 895697, at

*19 (E.D.N.Y. March 22, 2007) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir.1995)). The court may only consider evidence that would be admissible at trial in determining whether genuine issues of material fact exist. FED R. CIV. P. 56(e); *Abreu v. City of New York*, No. 04-CV-1721, 2006 WL 401651, at *3 (E.D.N.Y. Feb. 22, 2006).

## II. City Defendants' Liability

### A. Defendant NYPD

City Defendants assert, and Plaintiff concedes, that NYPD, as an entity, is not amenable to suit. Agencies, such as NYPD and divisions thereof, lack legal existence under New York Law. *See* NYC CHARTER § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."). As such, NYPD cannot be sued independently, rather the City of New York is the appropriate party. *Wray v. City of New York*, 340 F. Supp. 2d 291, 303 (E.D.N.Y. 2004); *see also Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) (noting that the district court correctly dismissed claims against NYPD since it is not a suable entity). Therefore, I respectfully recommend that all claims pending against NYPD be dismissed.

### B. Defendants Gomez and Goetz

City Defendants argue, and Armatas concedes, that there is no evidence that Gomez or Goetz were personally involved in the arrest, imprisonment, or prosecution of Armatas. Because neither Gomez nor Goetz was personally involved in the arrest or prosecution of Armatas, they cannot be liable for any of these claims. (Pl. Mem. in Opp. to City at 8.) As such, I respectfully

11

recommend that summary judgment be granted to Gomez and Goetz on all Section 1983 and state law claims.

### C. *False Arrest*

Armatas's civil rights and false arrest claims against the City and the remaining individual officers are based on his allegation that he was arrested without probable cause and that his children's detention was unlawful. To prove false arrest (and a Section 1983 claim predicated on false arrest), a plaintiff must establish: (1) that the defendants intended to confine the plaintiff, (2) that the plaintiff was aware of the confinement, (3) that this was done without the plaintiff's consent, and (4) that the arrest was not otherwise privileged. *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995); *Broughton v. State of New York*, 37 N.Y.2d 451, 456 (1975); *Johnson v. Kings County District Attorney's Office*, 308 A.D.2d 278, (2d Dep't. 2003). An arrest is privileged if the officer had probable cause to believe that the person arrested committed a crime. *See Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) ("[P]robable cause to arrest constitutes justification" for an arrest, precluding a false arrest claim.); *Martinez v. City of Schenectady*, 97 N.Y.2d 78, 85 (2001) (noting that probable cause is sufficient justification for arrest, thereby defeating a false arrest claim). As such, "the existence of probable cause is an absolute defense to a false arrest claim." *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006).

#### 1. *Existence of Probable Cause*

Under New York and Federal law, probable cause becomes a question of law to be decided by the court when there are no genuine disputes about the facts and proper inferences to be drawn therefrom. *Koester v. Lanfranchi*, 288 Fed. Appx. 764, 767 (2d Cir. 2008); *Fortunato v. City of New York*, 63 A.D.3d 880, 880 (2d Dep't 2009). In the instant case, there are genuine

issues of fact as to whether Christophersen interviewed Maroulleti over the phone prior to arrest and whether Armatas's behavior at the interview further supported Christophersen's decision to arrest.  However, it is undisputed that Christophersen had Maroulleti's police report and that Armatas acknowledged knowing her prior to his arrest.  The report and complaint follow-up report are the only information Borchers had before allegedly "acquiescing" in the arrest.  The question that remains, then, is whether on the basis of the report alone, probable cause existed for Armatas's arrest.  If probable cause existed on that basis alone, the disputed issues are not material and summary judgment should be granted to City Defendants on all claims premised on false arrest.  *See, e.g.*, *Koester*, 288 Fed. Appx. at 764 (finding probable cause when there were disputed facts since even if such facts were resolved in the plaintiff's favor, probable cause existed).

Probable cause to arrest exists when the officers "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  *Id.* at 152; *see also* N.Y.C.P.L. 140.10(1)(b); *People v. Coffey*, 12 N.Y.2d 443, 451 (1963).  "[P]olice officers, when making probable cause determinations, are entitled to rely on the victims' allegations that a crime has been committed," *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000); *see Minott v. City of New York*, 203 A.D.2d 265, 267 (2d Dep't. 1994) ("Information provided by an identified citizen accusing another individual of the commission of a specific crime is sufficient to provide the police with probable cause to arrest."), "'absent circumstances that raise doubts as to the victim's veracity.'"  *Parisi v. Suffolk County*, No. 04-CV-2187, 2009 WL 4405488, at *7 (E.D.N.Y. Nov. 30, 2009) (quoting *Singer v. Fulton*

*County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)); *cf. Fortunato*, 63 A.D.3d at 880 (requiring further inquiry where police had information indicating another suspect's guilt).

Maroulleti's report alone was sufficient to lead an officer of reasonable caution to believe that Armatas was guilty of harassment. In New York, a person commits harassment in the second degree "when, with intent to harass, annoy or alarm another person . . . [h]e or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same," N.Y. PENAL LAW § 240.26(1), and commits aggravated harassment in the second degree "when, with intent to harass, annoy, threaten or alarm another person, he or she: [m]akes a telephone call, whether or not a conversation ensues, with no purpose of legitimate communication," N.Y. PENAL LAW § 240.30(2). The information contained in Maroulleti's report established facts consistent with both harassment charges.

There was no objective reason to doubt that the accusations in Maroulleti's report were truthful and made in good faith. Although Armatas told the police Maroulleti was crazy, an accused's self-serving statements and denials upon hearing of a complainant's accusations do not raise sufficient doubt as to her veracity to necessitate further investigation. *See, e.g.*, *Sheehan v. New York City Police Dept. 78th Precinct Officers*, 2003 WL 22859947, at *3 (E.D.N.Y. 2003) ("[T]he officers were under no duty to release [plaintiff] based upon self-serving, exculpatory statements made during and after the arrest."). Moreover, the police were not required to seek out reasons to doubt Maroulleti's claim. *See Parisi*, 2009 WL 4405488, at *7 ("[T]he probable cause standard does not require that the arresting officer affirmatively seek out reasons to doubt the victim or witness where none are apparent."); *McDermott v. City of New York*, No. 94-CV-2145, 1995 WL 347041, at *4 (E.D.N.Y. May 30, 1995) ("To . . . insist upon a collateral

investigation into the credibility of the complainants would place an unfair burden on law enforcement officers. It would be unreasonable and impractical to require that each complainant be assessed prior to police action regarding the subject of the complaint."). Therefore, the police were entitled to rely on Maroulleti's account of the facts to establish probable cause.

Armatas contends that the police could "inherently" not have probable cause because they did not fully investigate Maroulleti's claim before making an arrest; however, the police "are not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 128 (2d Cir. 1997). Additionally, "even if plaintiff can establish that an investigation might have cast doubt upon the basis of his arrest, probable cause can still be established." *Obilo v. City University of City of New York*, No. 01-CV-5118, 2003 WL 1809471, at *9 (E.D.N.Y. April 7, 2003). Therefore, Aramatas's argument that the police should have done more investigation before arresting him is unavailing.

Given that the police were entitled to rely solely on Maroulleti's report, the existence of probable cause is a complete defense to Armatas's false arrest claims. I, therefore, respectfully recommend that summary judgment be granted to City Defendants on all false arrest claims.

### 2. *Availability of Qualified Immunity*

Even if probable cause did not exist for Armatas's arrest, Chistophersen, Edwin, and Borchers[6] are entitled to qualified immunity for Armatas's civil rights claims because, at a

---

[6] City Defendants also argue that Borchers cannot be liable under Section 1983 because his part in the arrest was merely supervisory. Armatas contends that he may be liable for "acquiescing" in the arrest. Since the 2009 decision in *Iqbal*, district courts in this circuit have recognized that acquiescence or passivity in an alleged violation alone may no longer serve as the basis of a Section 1983 claim. *See, e.g.*, *Morpurgo v. Incorporated Village of Sag Harbor*, 697 F. Supp. 2d 309, 329 (E.D.N.Y. 2010) (finding failure to state a claim under Section 1983 where the only participation was knowledge or at best acquiescence in constitutional violations); *Joseph v.*

15

minimum, arguable probable cause existed.  Government officials are entitled to immunity from suit when acting in their official capacity unless the official "*knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff."  *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982) (emphasis in original).  Moreover, the plaintiff must establish that the rights violated were "clearly established," meaning that a "reasonable" official would have understood "that what he [did] violate[d] that right."  *Anderson v. Creight*, 483 U.S. 635, 640 (1987).

Although the probable cause requirement is a clearly established constitutional right, the Supreme Court has long "recognized that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present."  *Id.* at 641.  In such cases, an official whose conclusion regarding probable cause is reasonable "should not be held personally liable."  *Id.*  Thus, if "arguable probable cause" existed to make an arrest, an officer is still entitled to immunity from suit, even where it is ultimately found that there was not probable cause.  *Escalera*, 361 F.3d at 743.

Arguable probable cause is established "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."  *Id.* (internal quotations omitted).  In considering whether "arguable probable cause" existed for the arrest, thus entitling Borchers,

_____

*Fischer*, No. 08-CV-2824, 2009 WL 3321011, at *14 (S.D.N.Y. Oct. 8, 2009) ("A defendant is not liable under section 1983 if the defendant's failure to act deprived the plaintiff of his or her constitutional right.").  However, the Second Circuit has yet to rule on how *Iqbal* affects its precedent regarding supervisory liability.  But since Borchers is entitled to qualified immunity because there was at least arguable probable cause for the arrest, the question of whether Borchers may be liable for passively approving the arrest need not be answered here.

Christophersen, and Edwin to qualified immunity, the Court can only consider "the facts known by the arresting officer[s] at the time of the arrest." *Jaegly*, 439 F.3d at 153.

As discussed, it is undisputed that at a minimum the officers had Maroulleti's report when Armatas was arrested. Since "the Second Circuit allows police officers, in making a probable cause determination, to rely on a victim's allegations that a crime has been committed," an officer could have reasonably concluded that probable cause to arrest Armatas existed solely on the basis of Maroulleti's complaint. *Oblio v. City University of City of New York*, No. 01-CV-5118, 2003 WL 1809471, at *9. Therefore, City Defendants are entitled to qualified immunity for Armatas's arrest even in the absence of a finding of probable cause, and I respectfully recommend granting summary judgment to the police officers on the Section 1983 claims.

### 3. *Existence of a City Policy*

Even if Armatas could establish that he was arrested without probable cause, liability cannot be imputed onto the City since he fails to establish the existence of a policy or procedure that caused the alleged violation of his constitutional rights. A municipality may not be held liable for a constitutional violation under a theory of *respondeat superior*; rather, the plaintiff must establish that the municipality had a policy or custom which caused the denial of a plaintiff's constitutional rights. *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 690-91 (1978); *Sahara v. Town of Southhold*, 48 F.3d 674, 685 (2d Cir. 1995). To prove a policy or custom existed, the plaintiff must establish:

> (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision-making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which

17

> constructive knowledge can be implied on the part of the
> policymaking officials; or (4) a failure by policymakers to properly
> train or supervise their subordinates, amounting to deliberate
> indifference to the rights of those who come in contact with
> municipal employees.

*Bonds v. Suffolk County Sheriff's Dept.*, No. 05-CV-3109, 2006 WL 3681206, at *2 (E.D.N.Y.

Dec. 5, 2006).

Armatas arguably plead: (1) the existence of a widespread, persistent practice from which

knowledge can be imputed on policymaking officials, alleging that the City "has a pervasive

pattern of constitutionally offensive conduct, including the knowing harassment and prosecution

of individuals, without probable cause or authority . . . ," Compl. ¶ 34; (2) a formal policy

alleging that the City maintains "a policy in writing, or in fact, by design or habit, to favor

politically-connected or media-connected complainants, to arrest and/or target the non-

politically-connected or non-media-connected . . . ," Amended Compl. ¶ 200; and, (3) a failure

to train or supervise amounting to deliberate indifference, Compl. ¶¶ 36-37. Even assuming that

these allegations sufficiently plead the existence of a policy or custom relating to violations of

Armatas's constitutional rights, there is no support in the record for any of these allegations.

The only proof Armatas purports to offer to support his claim of a pervasive pattern of

constitutionally offensive conduct is a so-called "pattern of falsification" allegedly identified by

the Honorable Jack B. Weinstein in *Colon v. City of New York*, Nos. 09-CV-8, 09-CV-9, 2009

WL 4263362 (E.D.N.Y. Nov. 25, 2009). Armatas did not direct the Court to the actual decision,

but rather the New York Daily News article summarizing the decision. However, upon reading

the actual decision, it is clear that Judge Weinstein did not find that there exists a pervasive

pattern of falsification leading to false arrests in New York City, but rather that the plaintiffs'

allegations in that case crossed "the line from conceivable to plausible" to state a viable claim under Section 1983. *Id.* at *2. The plaintiffs' allegations were significantly more specific than those made by Armatas, and were aimed specifically at the wrongful arrests of, and falsification of evidence against, minorities on the pretext of drug transactions. *Id.* at *1.

Unlike the plaintiff in *Colon*, however, Armatas asserts some vague pattern of falsification. He does not allege, nor does the evidence support, that any officers falsified evidence against him. He contends merely that the officers lacked probable cause to effect the arrest. The only party he accuses of falsifying evidence is Maroulleti in giving a false report to the police. Therefore, his reliance on *Colon* is misplaced.

Moreover, *Colon* was decided as a motion to dismiss prior to discovery, wherein the court needed only to determine whether the allegations were plausible. Judge Weinstein recognized that after discovery, "the charge may [have] prove[d] to be completely unfair to the city and its generally outstanding police force." *Id.* at *2. In the instant case, Armatas has already had the opportunity for full discovery on the issue of NYPD's alleged policy. Yet, Armatas offers no evidence supporting his theory of a widespread, pervasive departmental policy, wherein officers make arrests without probable cause.

Aramatas also alleged a pattern of favoritism to politically- and media-connected citizens. Amended Compl. ¶ 200; (*see also* Opp. to City Facts ¶ 46.) However, he has not cited any evidence to support this contention. Armatas cannot rely on his unsupported allegations to overcome summary judgment. Since there is no evidence of a formal policy of favorable treatment of political- or media-connected victims, nor any evidence of a pervasive, widespread practice to that effect, Armatas cannot use this as a basis of his Section 1983 claim against the

city.

Finally, there is no evidence in the record to support a theory of failure to train amounting to deliberate indifference. To support such a theory where the city has a training program, a plaintiff must "identify a specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation." *Wray v. City of New York*, 490 F.3d 189, 196 (2d Cir. 2007) (internal quotations omitted). Armatas has pointed to no specific defect in the training of New York City police officers that would cause the police to regularly make arrests without probable cause, and so, cannot rely on this theory either.

Accordingly, I respectfully recommend that even in the absence of a finding of probable cause, summary judgment be granted to the City on Plaintiff's Section 1983 claim.

### 4. *Detention of the Minor Plaintiffs*

City Defendants argue that the Minor Plaintiffs' claims must be dismissed because there was no intent to confine them as required to sustain a false arrest claim. Plaintiff makes no argument whatsoever on the subject. I respectfully recommend that summary judgment be granted to City Defendants on the Minor Plaintiffs' civil rights and false arrest claims, but not based on the specific arguments made by City Defendants.[7]

---

[7] City Defendants frame their argument as lack of intent to confine, citing a case wherein it was found that police did not intend to restrict the movement of a passenger when they pulled over a vehicle. *Mederios v. O'Connell*, 150 F.3d 164, 167-69 (2d Cir. 1998). Although it is clear that the police did not go to Armatas's house with any intent to arrest the children, once they made the decision to take the children to the police station, it is at least arguable that their intent was to restrict the children's movement, which *may* place their actions into the common law false arrest framework. City Defendants arguments are also premised, at least impliedly, on the reasonableness of the officers' decision to bring the children to the station in the absence of alternative childcare. Upon this basis, the children's false arrest claims fail.

Although the Minor Plaintiffs were technically seized within the meaning of the Fourth Amendment, "not all seizures are tantamount to arrests sustainable only upon probable cause." *Cherrington v. Skeeter*, 344 F.3d 631, 638 (6th Cir. 2003). Minor Plaintiffs were not detained on suspicion of criminal activity, and so it is inappropriate to apply the traditional false arrest inquiry to their civil rights claim. *See id.* (noting that the detention of a 2-year old with her mother who was placed under arrest did not fit into the normal false arrest framework). "In cases involving seizures short of a traditional arrest, the courts should be guided by 'the ultimate standard of reasonableness embodied in the Fourth Amendment.'" *Id.* at 638 (quoting *Michigan v. Summers*, 452 U.S. 692, 699-700 (1981)).

It is undisputed that the children were brought to the station with Armatas because he could not secure childcare. The police gave him an opportunity to call his niece to watch the boys, but she was unavailable. As such, the police were left with two alternatives—leave the 6- and 8-year old boys at home unattended (to which it is not clear Armatas would have consented) or take the boys to the station. The police chose the latter option. They did not handcuff Armatas in front of the children; they did not use a marked police car; they put the boys in an interview room with a television and let their father stay with them at all times, except when he was taken to be fingerprinted. Under these circumstances, the decision to take the children to the station with their father and the manner in which they were detained were not unreasonable. *See, e.g.*, *id.* at 637-42 (explaining that it was reasonable for the officers to detain the 2-year old plaintiff with her mother during her mother's arrest since it was inappropriate to leave her home alone); *Matheny v. Boatright*, 970 F.Supp. 1039, 1044 (S.D. Ga. 1997) (finding that police did not violate the due process rights of arrestee's minor children by taking them into custody where

the only alternative was to leave the children unattended); *Thibodeaux v. Arceneaux*, 618 F.Supp. 24, 29 (D.C. La. 1984) (dismissing a minor child's civil rights claim when she accompanied her parent to the police station because she was in her parent's custody the whole time and the decision to bring her to the station was her parent's). *Cf. Martini v. Russell*, 582 F. Supp. 136, 142 (C.D. Cal. 1984) (finding a city liable for incarceration of children detained with a parent where the children were held in a detention cell despite obvious discomfort and alternative accommodation options). Therefore, I respectfully recommend that summary judgment be granted to the officers for the Minor Plaintiffs' Section 1983 claims.

For the same reasons, the Minor Plaintiffs' independent state law false arrest claims should be dismissed. Even if the Minor Plaintiffs could establish the other elements of false arrest, the officers' actions were privileged. "In the context of a State tort action for false arrest or other intentional tort, the corresponding defense of privilege, shield[s] [] officer[s] from liability for objectively reasonable but mistaken exercises of judgment." *Arteaga v. State*, 72 N.Y.2d 212, 225 (1988). The officers' decision to take Armatas's children to the precinct, after giving him an opportunity to obtain childcare, was objectively reasonable, as were the conditions under which the children were detained. Therefore, I respectfully recommend that City Defendants be granted summary judgment on all false arrest claims.

### D. *Malicious Prosecution*

Armatas alleges malicious prosecution against Christophersen, Edwin, Borchers, and Alpert. He also bases his Section 1983 claim against Alpert on malicious prosecution. City Defendants argue first that Alpert is entitled to absolute prosecutorial immunity, precluding Armatas's Section 1983 and malicious prosecution claims. City Defendants argue further that

Armatas cannot establish any of the elements of malicious prosecution, entitling them to summary judgment.

### 1.  *Availability of Absolute Immunity*

"[P]rosecutors are absolutely immune from liability under Section 1983 for their conduct in 'initiating a prosecution and in presenting the State's case,' insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.'"  *Burns v. Reed*, 500 U.S. 478, 486 (1991) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1991)).  Courts have recognized that absolute immunity bars suit for malicious prosecution, even in the complete absence of even arguable probable cause.  *E.g.*, *Bernard v. County of Suffolk,* 356 F.3d 495, 502-05 (2d Cir. 2004) (recognizing that even improper motives, coupled with lack of probable cause, are not enough to deprive a prosecutor of absolute immunity); *Conte v. County of Nassau*, No. 06-CV-4746, 2010 WL 3924677, *16 (E.D.N.Y. Sept. 30, 2010) ("Assuming *arguendo* that there was no probable cause to continue the prosecution based on the information provided by [plaintiff], the County defendants are protected by absolute immunity with respect to the decision to continue the ongoing prosecution.").  The protection of absolute immunity extends to any "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings" or in preparing for trial.  *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

During the course of Armatas's prosecution, Alpert talked to supervisors regarding plea deals, spoke to Maroulleti about her allegations, engaged in motion practice and made court appearances.  These activities are "intimately associated with the judicial phase of the criminal process," and protected by prosecutorial immunity.  *Burns*, 500 U.S. at 486 (quoting *Imbler*, 424 U.S. at 430-31)  But Plaintiff asserts that Alpert also engaged in "investigatory" activities that are

not protected by prosecutorial immunity. In his Statement of Facts, Armatas asserts that the following activities were investigatory: obtaining a supporting deposition from the complainant, subpoenaing telephone records from NYPD, and requesting a supporting criminal court complaint from the detective. (Opp. to City Facts ¶¶ 115-16.) Prosecutors regularly interview witnesses, and they also must obtain evidence in admissible form for use. *See Buckley*, 509 U.S. at 273 (explaining that "professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial" are protected by absolute immunity). As such, the activities identified by Armatas were part and parcel of prosecution of his case, and are activities for which Alpert is, therefore, entitled to absolute immunity.

New York also recognizes immunity for prosecutors engaged in normal activities associated with bringing a criminal proceeding. *Wyllie v. District Atty. of County of Kings*, 2 A.D.3d 714, 719 (2d Dep't 2003). As such, I respectfully recommend that summary judgment be granted to Alpert on all malicious prosecution claims.

### 2. *Elements of Malicious Prosecution*

Even if Alpert were not entitled to immunity, however, Armatas cannot establish a lack of probable cause or actual malice in connection with his prosecution, and therefore, the City Defendants' motion for summary judgment should be granted. To prove malicious prosecution, a plaintiff must establish: (1) the initiation or continuation of a criminal proceeding, (2) termination of the criminal proceeding in his favor, (3) lack of probable cause for such proceeding, and (4) actual malice. *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997); *Broughton v. New York*, 37 N.Y.2d 451, 458 (1975).

24

### a. Initiation or Continuation of a Criminal Proceeding

City Defendants argue that neither Edwin, Borchers, nor Christophersen initiated or continued Armatas's prosecution. In fact, it is undisputed that Borchers and Edwin did not have any contact with the prosecutor's office regarding this case whatsoever. As such, they are entitled to summary judgment on this claim.

City Defendants, however, incorrectly state the law regarding Christophersen's involvement. They claim that he cannot be held liable for initiating the prosecution when all he did was inform the prosecutor's office of Maroulleti's report and execute a criminal court complaint. While City Defendants are correct that passing information to the D.A.'s office alone is not considered initiating a prosecution, "[a] police officer who swears to and signs a criminal court complaint . . . has initiated a prosecution." *Burt v. Aleman*, No. 05-CV-4493, 2008 WL 1927371, at *5 (E.D.N.Y. April 30, 2008) (internal quotations omitted); *Cox v. County of Suffolk*, 827 F.Supp. 935, 938 (E.D.N.Y.1993). By swearing to and signing the criminal court complaint, Christophersen initiated the criminal proceedings against Armatas, and Armatas can establish this element.

### b. Termination of Proceedings in Plaintiff's Favor

City Defendants argue that termination of the proceedings due to Maroulleti's failure to cooperate is not a termination in Armatas's favor. City Defendants correctly note that a plaintiff must establish that the termination was not "inconsistent with innocence" to prevail. *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 198 (2000). A termination not inconsistent with innocence does not require a ruling on the merits in the plaintiff's favor; rather, it requires a dismissal from which there can be "no further prosecution of the alleged offense." *Id.* at 196; *see*

*also id* at 199 ("[R]equiring that a plaintiff demonstrate innocence after a prosecution has been dismissed on speedy trial grounds would have the anomalous effect of barring recovery for an innocent accused whose prosecution was abandoned for lack of merit.").  For example under New York law, dismissals for failure to prosecute, for speedy trial violations, and in the interest of justice because of a complainant's failure to cooperate are considered favorable terminations to the accused.  *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 198 (2000); *Guntlow v. Barbera*, 76 A.D.3d 760, 765-66 (3d Dep't 2010).  Dismissals that have been found to be inconsistent with innocence generally fall into three categories: (1) misconduct on the part of the accused in preventing the trial from going forward, *e.g.*, *Halberstadt v. New York Life Ins. Co.*, 194 N.Y. 1, 11 (1909), (2) charges dismissed or withdrawn pursuant to a compromise with the accused, *e.g.*, *Hollender v. Trump Vil. Coop.*, 58 N.Y.2d 420, 426 (1983) (adjournment in contemplation of dismissal which required consent of prosecutor and accused is not a favorable termination), and (3) charges dismissed or withdrawn out of mercy requested or accepted by the accused, *e.g.*, *Ward v. Silverberg*, 85 N.Y.2d 993, 994 (1995).  *See Smith-Hunter*, 95 N.Y.2d at 196-97 (identifying the categories of dismissal that are inconsistent with innocence).

Therefore, City Defendants' assertion that dismissal based on Maroulleti's failure to cooperate is not a favorable termination to Armatas fails because it is inconsistent with New York law.  Once dismissed pursuant to N.Y.C.P.L. § 30.30, (Smith-Williams, Exh. H), there could be no further prosecution of Armatas for these alleged phone calls.  Moreover, Maroulleti's failure to cooperate, though not evidence of Armatas's innocence, was not inconsistent with his innocence.  Therefore, Armatas can also establish that the proceedings terminated in his favor.

c. <u>Lack of Probable Cause</u>

Generally, the existence of probable cause at arrest "justifies the ensuing criminal proceeding." *Reape v. City of New York*, 66 A.D.3d 755, 756(2d Dep't 2009). However, "[u]nder New York law, even when probable cause is present at the time of arrest, evidence could later surface which would eliminate that probable cause." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996) (internal quotations omitted). The discovery of some intervening fact, which tends to show charges are baseless, supports a finding that probable cause dissipated before the prosecution was initiated or during the continuation of proceedings. *Coleman v. City of New York*, 49 Fed. Appx. 342, 344 (2d Cir. 2002); *Lowth*, 82 F.3d at 571 (citing *Callen v. State* 73 N.Y.2d 731 (1988)).

Having already concluded that probable cause existed for Armatas's arrest, City Defendants are entitled to summary judgment on the malicious prosecution claim on this basis unless there is a genuine issue of fact as to some intervening facts known to, or which should have been known to, Christophersen in initiating the proceeding and Alpert in continuing the prosecution. However, Armatas does not contend that any such intervening fact existed, rather he relies on his arguments that the police never had probable cause for the arrest in the first place, and thus could not have probable cause for the prosecution of his case.

With respect to Christophersen, he initiated the proceeding on August 1, 2006—the day after Armatas was arrested—and there is no evidence in the record that he received any exculpatory information or reason to doubt Maroulleti's police report in the 1-day lapse. As to Alpert, the record shows that the information available to her, at first, supported continuing the prosecution since she obtained a sworn deposition from Maroulleti, in which Maroulleti averred

27

that all the facts in the criminal court complaint were true.  (Smith-Williams Decl., Exh. G.)

Furthermore, all information in the record suggests that when the People no longer had

Maroulleti's cooperation, and thus no longer had a basis for probable cause, the People

voluntarily dismissed the case on § 30.30 grounds.  (Smith-Williams Decl., Exh. H.)  Based on

these undisputed facts, Armatas cannot establish a lack of probable cause for the initiation and

continuation of his prosecution.

### d. Actual Malice

"[A] plaintiff need not demonstrate the defendant's intent to do him or her personal harm,

but need only show a reckless or grossly negligent disregard for his or her rights."  *Ramos v. City

of New York*, 285 A.D.2d 284, 300 (1st Dep't 2001).  Actual malice is rarely proven through

direct evidence of ulterior motives, but rather by inferences and circumstantial evidence

regarding the circumstances of the investigation and prosecution.  *Martin v. City of Albany*

42 N.Y.2d 13, 17 (1977).  Thus, "an egregious deviation from proper investigative procedures

[or] . . . initiation of the prosecution notwithstanding the total absence of probable cause" may be

evidence of actual malice.  *Ramos*, 285 A.D.2d at 300 (citations omitted).  Proceeding to

prosecution without probable cause, however, is merely evidence from which malice can be

inferred, but not does not lead to a presumption of actual malice.  *Martin v. City of Albany*, 42

N.Y.2d at 18.

The only inferences of malice to be made in the instant case come either from Plaintiff's

allegations that City Defendants lacked probable cause to prosecute or that the police conducted

an insufficient investigation.  As discussed above, probable cause existed to proceed with

Armatas's prosecution.  In regard to the failure to investigate as a basis of malice, Armatas

cannot establish an egregious deviation from proper investigative procedures. Armatas asserts

that telephone records should have been obtained, but as Borchers explained in his deposition

this is not always done in harassment cases because phone records can take weeks, if not months,

to procure. (Leino Decl., Exh. 10 at 16-17.) Armatas further asserts that Maroulleti should have

been interviewed; however, given that both federal and state courts allow probable cause to be

based on a complainant's report alone, *see, e.g.*, *Minott*, 203 A.D.2d at 267; *Cornett*, 2006 WL

845568, at *8-9, failure to interview Maroulleti cannot be said to be an egregious deviation from

investigative procedures so as to infer malice. Therefore, the evidence in the record is wholly

insufficient to infer actual malice in Armatas's prosecution.

Given that there are no genuine issues of material fact as to the existence of probable

cause for Armatas's prosecution and actual malice,[8] I respectfully recommend City Defendants

be granted summary judgment on all malicious prosecution claims.

### E. *Battery*

Armatas asserts common law battery against Christophersen and Edwin arising from his

handcuffing at the station. He alleges that the officers, in effecting the arrest, "made contact with

[him] by touching his body and/or head, grabbing him, and/or placing his wrists in handcuffs."

Compl. ¶¶ 68, 106. It is undisputed that he was handcuffed at the station when he was taken to

get fingerprinted. Although the use of any force in an unlawful arrest raises a cognizable battery

claim, *Wyllie*, 2 A.D.3d at 718, a plaintiff alleging battery on a lawful arrest (*i.e.*, an arrest made

with probable cause) must show that the force used was excessive, *see Bennett v. New York City*

---

[8] It is respectfully noted that should your Honor disagree with my recommendation that there is
no genuine issue of fact regarding probable cause, then material issues of fact exist as to the
probable cause and actual malice elements of Armatas's malicious prosecution claims.

*Housing Authority*, 245 A.D.2d 254, 255 (2d Dep't 1997) (recognizing a cause of action for excessive force used during lawful arrest). Since probable cause existed for Armatas's arrest, he must establish that the force used was excessive to sustain his claim. It is undisputed that Armatas was handcuffed only briefly to walk through the station as a safety precaution. Moreover, it is neither alleged, nor is there evidence in the record, that excessive force was used by any officer in placing the handcuffs on him or guiding him through the station. As such, I recommend that summary judgment be granted to City Defendants on the battery claims.[9]

### F.  *Negligence*

Additionally, Armatas asserts common law negligence claims against City Defendants on his own behalf and on behalf of his children. Armatas alleges that City Defendants were negligent by: failing to investigate, failing to obtain a sworn statement from the complainant, failing to accumulate competent evidence, failing to have probable cause or arguable probable cause, being influenced by "cronies" or politicians, acting in a corrupt manner, violating the rules and standards of NYPD, violating the rules or standards of law enforcement, and violating the Constitution. Compl. ¶¶ 82, 120, 152, 178. City Defendants correctly note that New York law precludes negligence claims arising out of investigations and prosecutions as a matter of public policy. *Batson-Kirk v. City of New York*, No. 07-CV-1950, 2009 WL 1505707, at *12 (E.D.N.Y. May 28, 2009) (relying on *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir.1994)); *see also Johnson v. Kings County District Attorney's Office*, 308 A.D.2d 278, 284-85 (2d Dep't 2003) (dismissing a plaintiff's negligent investigation claim since it is not a cognizable claim under

---

[9] It is respectfully noted that should your Honor disagree with my recommendation that probable cause be found for the arrest, and summary judgment on the false arrest claims is denied, then summary judgment on the battery claim, too, should be denied.

New York law).  As a matter of law, then, Armatas's claims of negligence predicated on his arrest and prosecution cannot go forward.  Therefore, I respectfully recommend that all of Plaintiff's negligence claims be dismissed.

### G. *Intentional Infliction of Emotional Distress*

Armatas alleges intentional infliction of emotional distress against Christophersen, Edwin, and Borchers on his own behalf and on behalf of his children.  He also alleges intentional infliction of emotional distress against the City and Alpert, but only on his own behalf.  To establish intentional infliction of emotional distress, a plaintiff must prove: (1) extreme and outrageous conduct, (2) intent to cause emotional distress, (3) a causal connection between the conduct and injury, and (4) severe emotional distress.  *Howell v. New York Post Co., Inc.*, 81 N.Y.2d 115, 121 (1993)*.*

As an initial matter, City Defendants argue that Plaintiff's claim against the City must be dismissed because New York public policy precludes such claims against government entities.  Because it is well-settled that public policy bars intentional infliction of emotional distress claims against government entities, *Lauer v. City of New York*, 240 A.D.2d 543, 543 (2d Dep't. 1997), I respectfully recommend that this claim against the City be dismissed.

Moreover, Plaintiff cannot establish conduct extreme and outrageous to prevail on this claim.  Liability for intentional infliction of emotional distress has only been found where conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 303 (1983).

It is undisputed that City Defendants went to Plaintiff's home while his children were

home, told him accompany them to the station, allowed him to call a family member to take the children, did not handcuff him or take him or his children in a marked police car, and allowed him to stay with his children at the precinct in an interview room watching television except when taking his fingerprints.  It is further undisputed that he was not handcuffed in front of his children, and was only handcuffed to walk through the station to get fingerprinted.  Given these undisputed facts, there is no rational interpretation of Armatas's encounter with the police that would constitute behavior beyond all possible decency, atrocious and intolerable in civilized society.  On the contrary, the record shows that the officers extended nothing but decency to Plaintiff in effecting his arrest—allowing him to try to arrange childcare for his young sons, not handcuffing him except when it was absolutely necessary as a safety precaution, and allowing him to stay with his sons for almost the full duration of his time at the precinct.

Alpert's conduct was not extreme or outrageous either.  She engaged only in routine activities of a prosecutor.  Even in the absence of probable cause, such activities are not so extreme and outrageous as to be considered atrocious or intolerable in civilized society.

As to the Minor Plaintiffs' claims of intentional infliction of emotional distress, the officers' conduct with respect to the Minor Plaintiffs was not extreme or outrageous.  Plaintiff's allegations suggest that the claims are based either on the theory that allowing the children to witness the aforementioned encounter or that detaining the children was extreme and outrageous.  In either case, Plaintiff cannot establish this element.  First, nothing about the encounter itself was extreme or outrageous.  Indisputably, the children did not see their father handcuffed, fingerprinted, or taken anywhere in a marked police car.  Furthermore, the arrest was made with probable cause and in a calm, peaceful fashion.  Merely allowing the children to be aware of

Armatas's arrest is not extreme or outrageous conduct.   Therefore, the children's claim cannot be predicated on having seen their father's encounter with the police.

With respect to the officers' conduct towards the children, there was nothing extreme or outrageous in that either.  The children were placed in an interview room, where they watched television while their father's arrest was processed.  As discussed *supra*, the officers' decision to take the children to the precinct, rather than leave them home alone, was a reasonable decision. Given all of the foregoing, it is clear that the children cannot establish that the officers' conduct was in any way extreme or outrageous as concerned them.  Therefore, I recommend granting City Defendants' summary judgment motion on the intentional infliction of emotional distress claims.

## III. Maroulleti's Liability

### A. Civil Rights

Maroulleti argues, and Armatas concedes, that she cannot be liable under Section 1983 since she is a private citizen and there is no proof that she was acting under color of state law. Section 1983 requires a plaintiff to show that the defendant, under color of state law, deprived the plaintiff of, or caused the plaintiff to be deprived of, rights guaranteed by the Constitution and/or federal law.  42 U.S.C. § 1983.  Private parties are not state actors, and generally not assumed to be acting under color of state law.  "[A] private actor [does] act[] under color of state law when the private actor 'is a willful participant in joint activity with the State or its agents.'" *Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)).

Maroulleti's only activity in connection with Armatas's arrest and prosecution is her

police report.  A private citizen who files a police report, true or false, is not acting under color of

state law, and cannot be held liable for any subsequent alleged constitutional violations by the

police.  *See Ginsberg v. Healy Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir.1999)

(explaining that providing information to the police did not make the private actor a joint

participant in state action); *Shapiro v. City of Glen Cove*, No. 03-CV-0280, 2005 WL 1076292,

(E.D.N.Y. May 5, 2005) (finding that a private citizen was not a state actor for Section 1983

purposes on the basis of making a police report, legitimate or not).  Because Maroulleti is not

alleged to be, nor can any proof be offered to show that she was, a state actor, I respectfully

recommend that summary judgment be granted to her on all Section 1983 claims.

### B. *Falsification*

In her summary judgment motion, Maroulleti summarily asserts that "there appears to be

no support in the law for a cause of action of falsification to authorities" without citing any law

to support her proposition or further expanding on the argument.  In response, Armatas asserts

that New York provides a private right of action based upon a penal statute if the plaintiff is a

member of the class to be protected, without citing any statutes or case law in support of this

proposition.

Armatas's falsification claim is premised on Maroulleti's alleged violation of N.Y. PENAL

LAW § 240.50, which criminalizes falsely reporting a crime.  Where a statute does not expressly

confer a private right of action, such action exists "only if a private right of action may be fairly

implied" in the statute.  *Hammer v. American Kennel Club*,1 N.Y.3d 294, 299 (2003) (quotations

omitted).  In making this determination, a New York court would consider not only whether the

plaintiff is a member of the class to be protected, but also "whether recognition of a private right

of action would promote the legislative purpose" and "whether creation of such a right would be consistent with the legislative scheme.'" *Id.* (quoting *Carrier v. Salvation Army*, 88 N.Y.2d 298, 302 (1996)).

Plaintiff fails to establish that private right of action should exist for violation of § 240.50.  Moreover, it seems unlikely that New York courts would find a private right of action to be implied in § 240.50.  *See Kwasnik v. City of N.Y.,* 298 A.D.2d 502, 502 (2d Dep't 2002) (holding that the plaintiff failed to demonstrate that § 240.50(2) implied a private right of action); *Sean M. v. City of N.Y.,* 20 A.D.3d 146, 157(1st Dep't 2005) (finding no private cause of action for a similar social services law regarding false child abuse complaints); *see also Croskey v. Medical and Technical Services*, No. 05-CV-6641, 2006 WL 2347816, at *4 (S.D.N.Y. August 10, 2006) (finding that New York courts would decline to imply a civil cause of action or tort based on a violation of § 240.50); *Casey Systems, Inc. v. Firecom, Inc.*, No. 94-CV-9327, 1995 WL 704964, at *3 (S.D.N.Y. November 29, 1995) (dismissing a private right of action based on N.Y. PENAL LAW §§ 156.00 and 165.00 because "[a]s a general rule, when a statute is contained solely within the Penal Law Section, the legislature intended it as a police regulation to be enforced only by a court of criminal jurisdiction").  Given that there is no private cause of action for falsification of information to the authorities as Armatas contends, I respectfully recommend that his claim and the derivative claim of his children should be dismissed.

### C.  *Intentional Infliction of Emotional Distress*

Maroulleti contends that Armatas cannot establish the elements of intentional infliction of emotional distress since he does not allege conduct extreme and outrageous, nor can he establish severe emotional distress.  Armatas does not address the issue of severe emotional distress, but

rather argues that to an innocent man, being hauled to the police station with your children to be handcuffed, fingerprinted, arrested, and prosecuted is extreme and outrageous conduct.

As discussed above, the first element of an intentional infliction of emotional distress claim requires conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *American Home Products Corp.*, 58 N.Y.2d at 303. Moreover, intentional infliction of emotional distress is a highly disfavored cause of action in New York; therefore, the burden to establish extreme and outrageous conduct is extremely high. *See Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 122 (1993) (noting that every intentional infliction of emotional distress claim considered by the New York Court of Appeals has failed because the conduct was not sufficiently outrageous). Plaintiff has not alleged conduct sufficiently outrageous to meet this high burden. *See, e.g.*, *Brown v. Sears Roebuck and Co.*, 297 A.D.2d 205, 212 (1st Dep't 2002) (finding that allegations of a false report to the police did not constitute extreme and outrageous conduct). Moreover, Armatas failed to offer evidence of any emotional distress, other than his bare allegations and a brief statement that the arrest caused him "great distress [and] suffering." (Armatas Aff. in Opp. to Maroulleti ¶ 76.) In the absence of objective medical evidence of severe emotional distress, or even subjective evidence describing the severe emotional harm he suffered, Armatas fails to raise a genuine issue of fact regarding severe emotional distress. *See, e.g.*, *Ruhling v. Tribune Co.*, No. 04-CV-2430, 2007 WL 28283, at *25 (E.D.N.Y. January 03, 2007) (granting summary judgment to the defendant where plaintiff offered no evidence of emotional distress). Therefore, I respectfully recommend granting Maroulleti's motion for summary judgment on the intentional infliction of emotional distress claim.

### D.  *False Arrest and Malicious Prosecution*

Maroulleti argues that the false arrest and malicious prosecution claims must be dismissed because probable cause existed for both arrest and prosecution, and because a civilian cannot be liable for either claim by merely providing information to the police.  In response, Armatas reasserts his argument that probable cause did not exist.

To the extent that Maroulleti's arguments for summary judgment on the false arrest and malicious prosecution claims are premised on the existence of probable cause to arrest and prosecute Armatas, such arguments are unavailing.  Maroulleti cannot use the existence of probable cause as a shield from liability for either of these claims since Armatas contends that she falsified the information on which probable cause rests.  *See Weiss v. Hotung*, 26 A.D.3d 855, 857 (4th Dep't. 2006) (holding that the existence of probable cause as to some entities did not apply to the defendant who was accused of falsifying information to the police since a genuine issue of fact remained on that issue); *Sears Roebuck and Co.*, 297 A.D.2d at 209 ("[P]robable cause finding as to one entity does not compel such a finding as to the other where the facts and circumstances known to each defendant may be different").

However, Maroulleti correctly asserts that a private citizen who provided information to the police can generally not be held liable for false arrest or malicious prosecution, since police are "free to exercise their own judgment as to whether an arrest should be made and criminal charges filed."  *Du Chateau v. Metro North Commuter Railroad*, 253 A.D.2d 128, 131 (1st Dep't 1999) (citing *Schiffren v. Kramer*, 225 A.D.2d 757, 758-59 (2d Dep't 1996)).  This is generally because a civilian cannot be said to have effected an arrest unless she "induced the officer to act," and cannot be said to have initiated a prosecution unless she "played an active role . . . such as

giving advice and encouragement or importuning the authorities to act." *Mesiti v. Wegman*, 307 A.D.2d 339, 340 (2d Dep't 2003).

But, where there is a genuine issue as to fact whether a civilian *intentionally* gave false information to the police that resulted in the plaintiff's arrest or prosecution, claims for false arrest and/or malicious prosecution should not be dismissed on summary judgment. *See, e.g.*, *Weiss*, 26 A.D.3d at 857 (reversing grant of summary judgment for malicious prosecution because a genuine issue of fact remained as to whether defendant's employee intentionally gave false information to the police resulting in the criminal proceeding); *Brown v. Nassau County*, 306 A.D.2d 303, 303 (2d Dep't. 2003) (affirming denial of summary judgment where there was a genuine issue of fact to whether the civilian defendant provided false information to police resulting in plaintiff's arrest and prosecution). Giving false information to the police may be sufficient to prove that a defendant caused the arrest of and/or initiated a criminal proceeding against the plaintiff, where that information was relied upon to make the arrest and/or proceed with prosecution. *Cf. Sears Roebuck and Co.*, 297 A.D.2d at 210 (recognizing this tenet, but ultimately granting summary judgment because the police did not rely on the allegedly false evidence produced by the defendant).

In the instant case, there is a genuine issue of fact as to whether Maroulleti intentionally gave false information to the police. Maroulleti maintains that Armatas called and threatened her and her family, (Maroulleti Aff. ¶ 16); Armatas claims that he never made any threatening remarks, (Armatas Aff. in Opp. to Maroulleti ¶ 16). In the face of competing affidavits, the issue of whether Maroulleti falsified information to police causing his arrest and prosecution is a credibility question for the factfinder to make at trial. As such, I respectfully recommend that

summary judgment for Maroulleti on the false arrest and malicious prosecution claims be denied.

## IV. Exercise of Supplemental Jurisdiction

Finally, City Defendants urge the Court to decline to exercise supplemental jurisdiction if all federal claims are dismissed. City Defendants correctly note that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (quoting *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). However, guided by these same principles, the decision to exercise pendent jurisdiction over state law claims has been upheld where the dismissal of federal claims occurred close to trial, at the end of extensive discovery, and after multiple dispositive motions had been decided. *See Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1191-92 (2d Cir.1996); *Raucci v. Town of Rotterdam*, 902 F.2d 1050, 1055 (2d Cir.1990).

Given the fact that trial is scheduled to begin less than a week from the issuance of this Report and Recommendation and that the parties have already spent over two and a half years in federal court litigating their federal and state law claims, judicial economy, convenience, and fairness all weigh in favor of exercising supplemental jurisdiction over all remaining state claims should all Section 1983 claims be dismissed as recommended in this report. Therefore, it is respectfully recommended that the Court retain jurisdiction over any and all remaining state claims, regardless of the decision to grant summary judgment on the federal claims.

## CONCLUSION

Based on all of the foregoing, I respectfully recommend that summary judgment be granted to City Defendants on all federal and state law claims. I further recommend that summary judgment be granted to Maroulleti on all federal claims and state law claims of "falsification" and intentional infliction of emotional distress. However, I recommend that Maroulleti's summary judgment motion be denied on the state law claims for false arrest and malicious prosecution.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court and the Honorable Sandra J. Feuerstein by October 21, 2010 in light of the impending trial on October 25, 2010. Failure to file timely objections may waive the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).


Dated: October 19, 2010
Brooklyn, New York


*Ramon E. Reyes, Jr.*
**Ramon E. Reyes, Jr.**
**United States Magistrate Judge**